UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                       :

LIAM FLETCHER,                       :
                                                       :

              Plaintiff,          :
                                                     :

           -against-           :
                                                       :      **COMPLAINT**

THE CITY OF NEW YORK; BEKIM      :
KALICOVIC; SEAN KWALWASSER; and   :      Index No.
JOHN/JANE DOES Nos. 1-10,        :

                                         :      **Jury Trial Demanded**

             Defendants.        :
                                                       :
-------------------------------------------------------------------x

Plaintiff LIAM FLETCHER, by and through his attorney, Robert T. Perry, alleges upon knowledge, information and/or belief as follows:

## PRELIMINARY STATEMENT

1.      Liam Fletcher brings this action under 42 U.S.C. § 1983, the First, Fourth and Fifth Amendments to the United States Constitution, and New York law against: the City of New York ("City"); Captain Bekim Kalicovic of the Police Department of the City of New York ("NYPD"); NYPD Detective Sean Kwalwasser; and other NYPD police officers whose identities are presently unknown to Mr. Fletcher.

2.      On September 17, 2020, Mr. Fletcher participated in a protest in lower Manhattan against the United States Immigration and Customs Enforcement ("ICE"), following reports that ICE had performed non-consensual hysterectomies on women held at the Irwin County Detention Center in Georgia.

3.      Even though Mr. Fletcher peacefully protested and committed no crime or offense, NYPD police officers assaulted Mr. Fletcher, arrested him, placed Mr. Fletcher in

excessively tight handcuffs for an extended period, and held him in custody much longer than necessary to process his arrest and under dangerous and unsafe conditions that exposed Mr. Fletcher to the COVID-19 virus, before finally releasing Mr. Fletcher with a desk appearance ticket falsely charging Mr. Fletcher with Obstructing Governmental Administration in the Second Degree, a misdemeanor, and Disorderly Conduct, a violation, under New York law.

4.      On April 14, 2021, after Mr. Fletcher had made four appearances in the Criminal Court of the City of New York, New York County, to defend himself against the bogus charges, all charges were dismissed for a failure to prosecute.

5.      In response to the anti-ICE protest on September 17, 2020, the NYPD deployed many police officers who lacked adequate training in policing protests in a manner consistent with the constitutional rights of peaceful protesters. The City's failure, through the NYPD, to deploy adequately trained police officers led and/or contributed to the injuries that Mr. Fletcher suffered on September 17, 2020 and continues to suffer, and evidenced deliberate indifference to Mr. Fletcher's constitutional rights.

6.      Mr. Fletcher seeks a declaratory judgment that the City's customs, practices and/or policies in effect on September 17, 2020 for policing protests violated Mr. Fletcher's right to freedom of speech under the First Amendment to the United States Constitution and right to be from unreasonable seizure under the Fourth Amendment to the United States Constitution. Mr. Fletcher also seeks compensatory and punitive damages to the extent permitted by law.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over Mr. Fletcher's federal law claims brought pursuant to 42 U.S.C. § 1983 under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4).

8.      This Court has jurisdiction over Mr. Fletcher's supplemental state law claims under 28 U.S.C. § 1367(a).

9.      Mr. Fletcher's claim for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. § 1983, Rule 57 of the Federal Rules of Civil Procedure, and the Court's inherent equitable authority.

10.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Mr. Fletcher's claims occurred in this district.

## JURY DEMAND

11.     Mr. Fletcher demands a trial by jury on each and every claim for which a jury trial is available under Fed. R. Civ. P. 38(b).

## PARTIES

12.     Plaintiff LIAM FLETCHER is a resident of the Town of Nyack in the County of Rockland and State of New York.

13.     Defendant THE CITY OF NEW YORK (the "City") is, and was at all relevant times, a municipal corporation duly organized and existing under the laws of the State of New York.  The City operates the Police Department of the City of New York ("NYPD"), which acts as the City's law enforcement agent and for which the City is ultimately responsible.  The City assumes the risks incidental to the maintenance of a police force and the employment of police officers, as said risks attach to the public consumers of the services provided by the NYPD.

14.     Defendant BEKIM KALICOVIC is, and was at all relevant times, a duly appointed agent, employee, officer, and servant of the NYPD.  At the time of the incident that gave rise to Mr. Fletcher's claims, defendant Kalicovic was a captain assigned to the NYPD's

Patrol Borough Manhattan South Specialized Units.  Defendant Kalicovic is being sued in his individual and official capacities.

15.     Defendant SEAN KWALWASSER (Shield No. 1438) is, and was at all relevant times, a duly appointed agent, employee, officer, and servant of the NYPD.  At the time of the incident that gave rise to Mr. Fletcher's claims, defendant Kwalwasser was an NYPD detective assigned to the NYPD Warrant Section.  Defendant Kwalwasser is being sued in his individual and official capacities.

16.     All "John Doe" and "Jane Doe" defendants are, and were at all relevant times, duly appointed agents, employees, officers and servants of the NYPD.  The Doe defendants are being sued in their individual and official capacities.

17.     At all relevant times, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, employees, officers and servants of the NYPD, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions and duties.  At all relevant times, the individual defendants were acting for and on behalf of the NYPD, with the power and authority vested in them as agents, employees, officers and servants of the NYPD.

18.     At all relevant times, the individual defendants acted jointly and in concert with each other.  Each individual defendant had the duty and the opportunity to protect Mr. Fletcher from the unlawful actions of the other individual defendants but each individual defendant failed and refused to perform such duty, thereby proximately causing Mr. Fletcher's injuries.

## STATEMENT OF FACTS

19.     On Thursday, September 17, 2020, Mr. Fletcher participated in a protest in lower Manhattan against the United States Customs and Immigration Enforcement ("ICE"), which

reportedly had performed involuntary hysterectomies on women held at the Irwin County Detention Center in Georgia.

20.     Approximately 50 protesters, including Mr. Fletcher, assembled that afternoon in Thomas Paine Park in Foley Square, across the street from the federal building housing the local ICE field office.

21.     The protesters, including Mr. Fletcher, all wore face masks to protect themselves from the COVID-19 virus.

22.     Well over 100 police officers, including members of the NYPD Strategic Response Group, plainclothes officers, bicycle officers and police on motor scooters were present in the vicinity.  Most of the officers were maskless.

23.     As protesters, including Mr. Fletcher, began marching west towards Broadway on the sidewalk, police officers funneled them onto the street, where officers suddenly and violently tackled some protesters to the ground.

24.     Rattled by the police assault, other protesters, including Mr. Fletcher, started running south on Broadway to avoid themselves becoming victims of police assaults.

25.     At Greenwich Street and Courtlandt Street, defendant Kalicovic and other police officers -- Doe defendants -- tackled Mr. Fletcher to the ground, ripping off his face mask.

26.     At the time he was taken into custody, Mr. Fletcher had committed no crime or offense, and there was no probable cause to believe that he had committed any crime or offense.

27.     A police officer -- a Doe defendant -- placed Mr. Fletcher in excessively tight zip-tie handcuffs with his hands behind his back.

28.     Mr. Fletcher repeatedly asked police officers -- Doe defendants -- to loosen his handcuffs to no avail.

29.     With other arrestees, Mr. Fletcher was forced to sit on a sidewalk rear-cuffed for about an hour.

30.     At some point, a maskless, white-shirted police officer holding a cigar -- a Doe defendant -- approached the arrestees, including Mr. Fletcher, offering to loosen their handcuffs with a pocket knife but then walked away without doing so after getting into a verbal argument with an arrestee.

31.     After sitting on the sidewalk rear-cuffed for about an hour, Mr. Fletcher was placed in an overheated police van (on a warm September day) with seven or so other arrestees.

32.     Mr. Fletcher and the other arrestees complained about the excessive heat to police officers -- Doe defendants -- to no avail.

33.     Following a 15-to-20-minute wait, Mr. Fletcher and the other arrestees were transported to One Police Plaza.

34.     During the trip, Mr. Fletcher complained to police officers -- Doe defendants -- about his excessively tight handcuffs, the overheating, the lack of social distancing and the lack of face masks, to no avail.

35.     At One Police Plaza, Mr. Fletcher was searched, fingerprinted, photographed and placed in a crowded holding cell lacking any social distancing between arrestees, where a police officer finally removed the excessively tight handcuffs from Mr. Fletcher's wrists.

36.     All told, Mr. Fletcher remained in excessively tight handcuffs for two-to-three hours despite his repeated pleas to police officers -- Doe defendants -- to loosen the handcuffs.

37.     During his time in custody, Mr. Fletcher also repeatedly asked for a new face mask to replace the one ripped off his face when his was tackled to the ground by defendant

Kalicovic and other police officers -- Doe defendants -- but Mr. Fletcher was not given a new face mask until he arrived at One Police Plaza.

38.     After six to seven hours in custody, Mr. Fletcher was released with a desk appearance ticket issued by defendant Kwalwasser.

39.     Mr. Fletcher was arraigned on December 14, 2020 in the DAT Part of the Criminal Court of the City of New York, New York County ("Criminal Court"), on a complaint sworn to by defendant Kwalwasser charging Mr. Fletcher with Obstructing Governmental Administration in the Second Degree, N.Y. Penal Law § 195.05, a Class A misdemeanor, and Disorderly Conduct, N.Y. Penal Law § 240.20(6), a violation.

40.     In the complaint, defendant Kwalwasser alleged that he was informed by defendant Kalicovic that on September 17, 2020 at about 5:55 p.m. at the southwest corner of Greenwich Street and Courtlandt Street, defendant Kalicovic observed Mr. Fletcher be given an order to move back and to disperse and that Mr. Fletcher refused to do so, and defendant Kalicovic further observed Mr. Fletcher push police officers, preventing them from being able to clear other individuals from the sidewalk and roadway.

41.     Defendant Kwalwasser's allegations were false, as Mr. Fletcher never refused to obey an order to move back and disperse and never pushed any police officer.

42.     Mr. Fletcher pled not guilty, rejecting the plea bargain offer made by the New York County District Attorney's office ("District Attorney") of an adjournment in contemplation of dismissal ("ACD").

43.     Mr. Fletcher's criminal case was transferred to Part A of the Criminal Court and adjourned to January 14, 2021 for the District Attorney to serve and file a supporting deposition sworn to by defendant Kalicovic.

44.     In early January 2021, the District Attorney served and filed off-calendar defendant Kalicovic's sworn supporting deposition.

45.     On January 14, 2021, in Part A of the Criminal Court, the complaint was deemed an information, and the case was adjourned to March 1, 2021 for trial.  Mr. Fletcher again rejected the District Attorney's offer of an ACD.

46.     On March 1, 2021, in Part A of the Criminal Court, the District Attorney answered not ready for trial.  Mr. Fletcher for the third time rejected the District Attorney's offer of an ACD.  The case was adjourned to April 14, 2021 for trial.

47.     On April 14, 2021, in Part A of the Criminal Court, Mr. Fletcher's case was dismissed for failure to prosecute.

48.     On information and belief, Mr. Fletcher was targeted for law enforcement action because he, along with others on September 17, 2020, engaged in peaceful protest activity.

49.     As a result of the above police actions on and after September 17, 2020, Mr. Fletcher suffered a deprivation of liberty, bodily injury, emotional distress, mental anguish, shock, fright, apprehension, embarrassment, humiliation, and a chill on his free speech rights.

**The City's Customs, Practices and Policies Relating to Policing of Protests**

50.     Time and again, for more than two decades, NYPD police officers have regularly violated the civil rights of peaceful protesters in a myriad of ways, including by:

(a)     arresting peaceful protesters without probable cause to believe they have committed any crime or offense;

(b)     using excessive force on peaceful protesters;

(c)     holding arrested protesters in custody -- often under dangerous and unsafe conditions -- well beyond the time needed to process their arrests; and

(d)      placing arrested protesters in excessively tight handcuffs for extended periods of time.

51.      Thus, for example, during the February 15, 2003 demonstration against the Iraq War, NYPD officers undertook "dangerously disproportionate and unnecessary action," according to the New York Civil Liberties Union ("NYCLU").  NYCLU, *Arresting Protest* (2003) at 11, *available at* https://www.nyclu.org/sites/default/files/nyclu_arresting_protest.pdf.

52.      NYCLU documented repeated instances of NYPD police officers misusing their batons on peaceful protesters. *See, e.g., Arresting Protest* at 11 ("[B]aton wielding riot police . . . knocked protesters down in an attempt to push them onto the sidewalk."); *id.* at 13 ("The officers continued to wield their batons as the horses came down the street from Second Avenue."); *id.* at 14 ("Batons were also used against the crowd.  A 63-year-old Manhattan woman reported that a police officer 'turned his nightstick around, pointed it directly at me, and jammed me so hard in the gut that I went crashing to the sidewalk.'").

53.      NYCLU also reported a pattern of NYPD police officers arresting protesters without probable cause to believe they had committed any crime or offense. *See, e.g., Arresting Protest* at 13 ("even though [protesters] had permission to be there, many were arrested.").

54.      NYCLU further found that "nearly all [arrestees] were held much longer than necessary" to process their arrests and under dangerous and unsafe conditions. *Arresting Protest* at 21; *see also id.* ("After one group began demanding to use the bathroom, the police chained them together and forced them to stand in the courtyard outside in the cold.").

55.      NYCLU also documented that protesters were placed in excessively tight handcuffs for extended periods. *See, e.g., Arresting Protest* at 21 ("Fifteen detainees reported problems arising from being handcuffed for the extended period prior to processing.  Many

complained that their plastic handcuffs were on so tightly that they cut off circulation and eventually broke through the skin. One officer admitted that the cuffs were not meant to be used for such a long duration, but refused to remove them nonetheless.").

56.     Similarly, during the Republican National Convention in the summer of 2004, NYPD police officers arrested many peaceful protesters without probable cause to believe they had committed any crime or offense. *See, e.g.,* NYCLU, *Rights and Wrongs at the RNC* (2005) at 7 (227 people arrested at the August 31 World Trade Center sidewalk march; Manhattan District Attorney dismissed all cases after viewing a videotape depicting the entire sequence of events surrounding these arrests); *id.* at 12 ("In each instance of mass arrests, large numbers of people were peacefully assembled on public streets or sidewalks, and the police failed to provide any meaningful order or opportunity for people to disperse before arresting them."), *available at* https://www.nyclu.org/sites/default/files/publications/nyclu_pub_rights_wrongs_rnc.pdf.

57.     NYCLU found that most of the arrestees were held in custody much longer than necessary to process their arrests and under dangerous and unsafe conditions. *See. e.g., Rights and Wrongs at the RNC*, at 14 ("[T]he NYCLU received reports from 169 people about how long they were held after being arrested. Two-thirds of them reported having been detained for more than 24 hours and nearly 40% of them reported being held for 36 hours or more."); *id.* at 15 ("By all accounts, there was inadequate seating in the holding cells at Pier 57, which forced people to sit or lie on the bare concrete floors covered with soot and grease. Though hundreds of people were held at Pier 57 for extended periods of time and in many instances overnight, they had no access to running water or blankets. The only bathroom facilities were portable toilets, which quickly became disgusting; many detainees reported people relieving themselves in the open out of desperation.").

58.    NYCLU also reported that a "videotape show[ed] police officers striking protesters with batons in a chaotic scene prompted by officers suddenly pulling a line of barricades across Eighth Avenue near Madison Square Garden." *Rights and Wrongs at the RNC*, at 20.

59.    NYCLU further reported receiving 50 complaints of arrestees being held in excessively tight handcuffs, two arrestees for up to eight hours, and officer refusals to loosen the handcuffs. *Rights and Wrongs at the RNC*, at 34.

60.    NYPD police officers employed much the same flawed approach in response to the protests in the spring and summer of 2020 against systemic racism in law enforcement following the murder of George Floyd by Minneapolis police officers ("Floyd protests").  As the New York City Department of Investigation ("NYC DOI") noted in its report on the NYPD's response to those protests, "[the] NYPD's primary strategy in at least the early days of the Floyd protests appears to have involved defaulting to an application of 'disorder control' tactics and methods, without adjustment to reflect the NYPD's primary responsibility for facilitating lawful First Amendment expression. These deployment strategies, tactics, and shows of force exacerbated confrontations between police and protesters, rather than de-escalating tensions." NYC DOI, *Investigation into NYPD Response to the George Floyd Protests* (Dec. 2020) at 3, *available at* https://www1.nyc.gov/assets/doi/reports/pdf/2020/DOIRpt.NYPD%20GeorgeFloyd%20Protests.12.18.2020.pdf.

61.    The NYC DOI further observed that "by adopting a broad disorder control approach focused on force, control, and arrests, the NYPD gave insufficient attention to the need to balance the important objective of preventing additional violence and damage with the

imperative of protecting citizens' rights to engage in lawful protest. This approach inevitably led to instances where NYPD officers acted indiscriminately as between lawful, peaceful protesters and unlawful actors, thereby exercising force beyond what was necessary under the circumstances." *Id.* at 40.

62.     According to the NYC DOI, the New York City Civilian Complaint Review Board received 1,646 protest-related allegations against NYPD police officers associated with 248 incidents occurring between May 28 and June 20, 2020, with force allegations comprising the largest number of allegations. *Id.* at 28.

63.     The NYC DOI concluded that: "[w]hile assessments of whether individual officers used excessive force or unjustified force in specific incidents await the conclusion of disciplinary investigations, there can be no question that NYPD officers employed force against protesters on numerous occasions that observers on the scene (whether [members of the Mayor's Community Affairs Unit], members of the media, or others) perceived to be unjustified by the circumstances." *Id.* at 43.

64.     According to the NYC DOI, the Mayor's Community Affairs Unit confirmed through its field staff that NYPD police officers used excessive force, including punching, kicking, tackling, or using batons to strike protesters. *Id.* at 42.

65.     Given the NYPD's past mishandling of protests, NYPD policymakers were plainly on notice prior to the September 17, 2020 anti-ICE protest in which Mr. Fletcher participated that adequate training of NYPD police officers in policing protests would greatly reduce violations of peaceful protesters' constitutional rights.

66.     Yet, during that protest, the NYPD deployed many police officers who lacked sufficient, or sufficiently recent, training on policing protests. *Cf.* NYC DOI, *Investigation into*

*NYPD Response to the George Floyd Protests* at 4, 56-63; *see also id.* at 61 (Prior to the Floyd protests, "the NYPD offered no comprehensive in-service training across the Department that related to policing protests at all.").

67.     In failing to adequately train NYPD police officers how to police protests in a manner consistent with the constitutional rights of peaceful protesters, the City, through the NYPD, acted in deliberate indifference to the constitutional rights of peaceful protesters, including Mr. Fletcher, on September 17, 2020.

68.     The failure of the City, through the NYPD, to adequately train NYPD police officers how to police protests in a manner consistent with the constitutional rights of peaceful protesters led and/or contributed to the injuries that Mr. Fletcher suffered on September 17, 2020 and continues to suffer, and proximately caused those injuries.

## FIRST CLAIM FOR RELIEF

### False Arrest Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

69.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

70.     The defendant police officers, including defendants Kalicovic and Kwalwasser, acting under color of state law, individually and in concert and within the scope of their authority, stopped, arrested and caused Mr. Fletcher to be imprisoned without probable cause or reasonable suspicion to believe that Mr. Fletcher had committed any crime or offense, in violation of Mr. Fletcher's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

71.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, emotional distress, and other damages and injuries.

13

72.    The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SECOND CLAIM FOR RELIEF

**Excessive Force Claim Under 42 U.S.C. § 1983**
**(Against the Defendant Police Officers)**

73.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

74.    The defendant police officers, including defendants Kalicovic and Kwalwasser, acting under color of state law, individually and in concert and within the scope of their authority, used objectively unreasonable force on Mr. Fletcher, in violation of Mr. Fletcher's right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution.

75.    As a result of the foregoing, Mr. Fletcher suffered bodily injury, emotional distress, and other damages and injuries.

76.    The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## THIRD CLAIM FOR RELIEF

**Free Speech Claim Under 42 U.S.C. § 1983**
**(Against the Defendant Police Officers)**

77.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

78.     The defendant police officers, including defendants Kalicovic and Kwalwasser, acting under color of state law, individually and in concert and within the scope of their authority, deprived Mr. Fletcher of his right to freedom of speech under the First Amendment to the United States Constitution by preventing Mr. Fletcher from engaging in a peaceful protest against ICE on September 17, 2020.

79.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries, and his speech was chilled.

80.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## FOURTH CLAIM FOR RELIEF

### Free Speech Retaliation Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

81.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

82.     The defendant police officers, including defendants Kalicovic and Kwalwasser, acting under color of state law, individually and in concert and within the scope of their authority, deprived Mr. Fletcher of his right to freedom of speech protected by the First Amendment to the United States Constitution by targeting Mr. Fletcher for law enforcement action in retaliation for Mr. Fletcher's lawful exercise of his right to freedom of speech.

83.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries, and his speech was chilled.

84.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

### FIFTH CLAIM FOR RELIEF

**Denial of Right to Fair Trial Claim Under 42 U.S.C. § 1983
(Against the Defendant Police Officers)**

85.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

86.     The defendant police officers, including defendants Kalicovic and Kwalwasser, acting under color of state law, individually and in concert and within the scope of their authority, fabricated evidence of a material nature likely to influence a jury's decision, forwarded that evidence to prosecutors, and Mr. Fletcher suffered a deprivation of liberty as a result, in violation of his right under the Fifth Amendment to the United States Constitution not to have police deliberately fabricate evidence and use it to frame and bring false charges against an arrestee.

87.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, emotional distress, and other damages and injuries.

88.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

16

## SIXTH CLAIM FOR RELIEF

### Malicious Prosecution Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

89.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

90.     The defendant police officers, including defendants Kalicovic and Kwalwasser, acting under color of state law, individually and in concert and within the scope of their authority, and also acting with malice, caused Mr. Fletcher to be prosecuted, despite a lack of probable cause to initiate or continue the criminal proceeding, and the proceeding terminated in Mr. Fletcher's favor on the merits, in violation of Mr. Fletcher's right to be free from malicious prosecution under the Fourth Amendment to the United States Constitution.

91.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, emotional distress, and other damages and injuries.

92.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## SEVENTH CLAIM FOR RELIEF

### Failure to Intervene Claim Under 42 U.S.C. § 1983
### (Against the Defendant Police Officers)

93.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

94.     The defendant police officers, including defendants Kalicovic and Kwalwasser, each had an affirmative duty to intervene on behalf of Mr. Fletcher, whose constitutional rights were being violated in that defendant's presence by other police officers, but failed to intervene

to prevent the unlawful conduct, despite having a realistic opportunity to do so, in violation of Mr. Fletcher's right to freedom of speech under the First Amendment to the United States Constitution, right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution, and right under the Fifth Amendment to the United States Constitution not to have police deliberately fabricate evidence and use it to frame and bring false charges against an arrestee.

95.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

96.     The unlawful conduct of the defendant police officers was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed against them.

## EIGHTH CLAIM FOR RELIEF

### Monell Claim Under 42 U.S.C. § 1983
### (Against the City)

97.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

98.     Defendant City, through the NYPD, has implemented, enforced, encouraged, sanctioned, and/or ratified customs, practices and policies that have led and/or contributed to the violation of the rights of peaceful protesters, including Mr. Fletcher, to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution and freedom of speech under the First Amendment to the United States Constitution.

99.     These customs, practices and policies include:

(a)     arresting peaceful protesters without probable cause to believe they have committed any crime or offense;

18

(b)     using excessive force on peaceful protesters;

(c)     holding arrested protesters in custody well beyond the time needed to process their arrests and often under dangerous and unsafe conditions; and

(d)     placing arrested protesters in excessively tight handcuffs for extended periods of time.

100.    These customs, practices and policies were a moving force behind the violation of Mr. Fletcher's First and Fourth Amendment rights on September 17, 2020, and proximately caused Mr. Fletcher's injuries.

101.    Defendant City, through the NYPD, acted with deliberate indifference to the likely violation of the First and Fourth Amendment rights of peaceful protesters, including Mr. Fletcher, on September 17, 2020 by failing to adequately train, supervise, and/or discipline NYPD officers to respect those rights.

### Supplemental State Law Claims

102.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

103.    Mr. Fletcher timely served upon, presented to, and filed with defendant City a Notice of Claim setting forth all facts and information required under New York General Municipal Law § 50-e.

104.    More than thirty (30) days have elapsed since the presentation of Mr. Fletcher's claims to defendant City but defendant City has wholly neglected or refused to make an adjustment or payment thereof.

105.    This action was commenced within the time allowed to commence actions asserting claims against defendant City under New York General Municipal Law § 50-i(1)(c).

106.    Mr. Fletcher has complied with all conditions precedent to maintaining this action.

## NINTH CLAIM FOR RELIEF

### False Arrest Claim Under New York Law
### (Against All Defendants)

107.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

108.    The defendant police officers, including defendants Kalicovic and Kwalwasser, acting in concert and within the scope of their authority, stopped, arrested and caused Mr. Fletcher to be imprisoned without probable cause or reasonable suspicion to believe that Mr. Fletcher had committed any crime or offense, and without any warrant or authority to do so.

109.    As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

110.    Defendant City is liable to Mr. Fletcher for the damages that he suffered under the doctrine of *respondeat superior*.

## TENTH CLAIM FOR RELIEF

### Assault Claim Under New York Law
### (Against All Defendants)

111.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

112.    The defendant police officers, including defendants Kalicovic and Kwalwasser, acting in concert and within the scope of their authority, placed Mr. Allen in apprehension of imminent harmful and offensive bodily contact.

113.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

114.     Defendant City is liable to Mr. Fletcher for the damages that he suffered under the doctrine of *respondeat superior*.

## ELEVENTH CLAIM FOR RELIEF

### Battery Claim Under New York Law
### (Against All Defendants)

115.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

116.     The defendant police officers, including defendants Kalicovic and Kwalwasser, acting in concert and within the scope of their authority, made offensive contact with Mr. Fletcher without privilege or consent.

117.     As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

118.     Defendant City is liable to Mr. Fletcher for the damages that he suffered under the doctrine of *respondeat superior*.

## TWELFTH CLAIM FOR RELIEF

### Malicious Prosecution Claim Under New York Law
### (Against All Defendants)

119.     Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

120.     The defendant police officers, including defendants Kalicovic and Kwalwasser, acting in concert and within the scope of their authority, and also acting with malice, caused Mr.

Fletcher to be prosecuted, despite a lack of probable cause to initiate or continue the criminal proceeding against him, and the proceeding terminated in Mr. Fletcher's favor on the merits.

121.    As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, emotional distress, and other damages and injuries.

122.    Defendant City is liable to Mr. Fletcher for the damages that he suffered under the doctrine of *respondeat superior*.

## THIRTEENTH CLAIM FOR RELIEF

**Free Speech Claim Under New York Law**
**(Against All Defendants)**

123.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

124.    The defendant police officers, including defendants Kalicovic and Kwalwasser, acting in concert and within the scope of their authority, deprived Mr. Fletcher of his right to freedom of speech under Article 1, Section 8 of the New York State Constitution by preventing Mr. Fletcher from engaging in a peaceful protest on September 17, 2020 and by targeting Mr. Fletcher for law enforcement action in retaliation for Mr. Fletcher's lawful exercise of his right to freedom of speech.

125.    As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries, and his speech was chilled.

126.    Defendant City is liable to Mr. Fletcher for the damages that he suffered under the doctrine of *respondeat superior*.

## FOURTEENTH CLAIM FOR RELIEF

### Negligent Screening, Hiring and Retention Claim Under New York Law
### (Against Defendant City)

127.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

128.    Defendant City failed to use reasonable care in the screening, hiring and retention of the NYPD employees who participated in the above unlawful conduct.

129.    As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

## FIFTEENTH CLAIM FOR RELIEF

### Negligent Training and Supervision Under New York Law
### (Against Defendant City)

130.    Mr. Fletcher realleges and incorporates by reference the allegations set forth in the foregoing paragraphs as if fully set forth herein.

131.    Defendant City failed to use reasonable care in the training and supervision of the NYPD employees who participated in the above unlawful conduct.

132.    As a result of the foregoing, Mr. Fletcher suffered deprivation of liberty, bodily injury, emotional distress, and other damages and injuries.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Fletcher demands the following relief against the defendants, jointly and severally:

(a)    compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)    punitive damages against the individual defendants;

    (c)      injunctive relief declaring that defendant City's customs, practices and/or customs in effect on September 17, 2020 for policing protests violated Mr. Fletcher's right to freedom of speech under the First Amendment to the United States Constitution and right to be free from unreasonable seizure under the Fourth Amendment to the United States Constitution;

    (d)      reasonable attorneys' fees and costs of this litigation; and

    (e)      such other and further relief as this Court deems just and proper.

Dated: Brooklyn, New York
       December 15, 2021

Respectfully submitted,

*Robert T. Perry*

ROBERT T. PERRY
rtperry32@gmail.com
509 12th Street
Suite 2C
Brooklyn, New York 11215
(347) 415-5272

*Counsel for Plaintiff*